UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERMASTINE GORDON,

        Plaintiff,

vs.

PLANNED PARENTHOOD,

        Defendant.
                                  /

Case No. 1:06-CV-98

Hon. Hugh W. Brenneman, Jr.

**OPINION**

This matter is now before the court on defendant's motion for summary judgment (docket no. 42). For the reasons stated below, defendant's motion will be granted.

**I.     Background**

Pro se plaintiff, Hermastine Gordon, is an African-American woman. Defendant Planned Parenthood Centers of West Michigan (sometimes referred to as "Planned Parenthood") hired plaintiff on September 1, 1987 to work at its Cherry Street Clinic. Hermastine Gordon deposition at 7, attached to defendant's brief as exh. A1. It is undisputed that at the relevant times in this suit, plaintiff was an at will employee, with the position of Health Care Specialist One ("HCS-I"). Suzanne Reiter, a registered nurse, nurse practitioner and defendant's Vice President of Medical Services, was responsible for supervising defendant's medical department personnel. Reiter Aff. at ¶ 2.

This suit involves plaintiff's actions in dispensing a medication known as ECP or emergency contraception. Suzanne Reiter Affidavit at ¶ 3, attached to defendant's brief as exh.B. "ECP is prescribed for women who have engaged in unprotected sex, but do not want to become

pregnant and is sometimes referred to as 'Plan B' or the 'morning after' pill." *Id.* Defendant is authorized to prescribe and dispense this medication under the standing orders of its medical director. *Id.* Defendant's written protocol, i.e., the standing order, requires that ECP be dispensed to a patient (sometimes referred as a "client") "only with nurse clinician oversight to assure that a patient's chart is reviewed for contradictions [sic]" and "only upon written clinical authorization." *Id.* at ¶ 4. HCS-I workers, such as plaintiff, "are not allowed to dispense ECP absent nurse oversight and written clinical authorization for the prescription." *Id* at ¶ 4.

The standing order for prescriptions in effect at the relevant time period (January 2004) provided in pertinent part as follows:

> 17. <u>Emergency Contraception Plan B</u> - In the absence of a clinician, RN staff may distribute pending, no contraindications and patient history of unprotected coitus < 120 hours. A negative pregnancy test should be obtained if history of unprotected coitus > seven (7) days. If any variance from the above conditions, a phone order must be obtained from a clinician. Following a verbal order, the order must be signed by a prescribing clinician or Medical Director.

Standing Order (January 14, 2004), attached to Diane Brady Affidavit as exh. 1. Plaintiff identified nurse practitioners and the duty doctor as the individuals authorized to prescribe medications. Gordon dep. at 21. At the hearing, the parties advised the court that the term "clinician" refers to a nurse with an advanced nursing degree, such as an "NP" (nurse practitioner) and an "APN" (advanced practicing nurse).

In addition, defendant and its employees are bound by certain program guidelines administered by the United States Department of Health and Human Services. These guidelines require that the following "components" must be offered to and documented on all clients at the initial visit: education; counseling; informed consent; history; examination; laboratory testing; and,

follow-up and referrals.  Program Guidelines for Project Grants for Family Planning Services, § 7.2, attached to Brady Aff. as exh. 2.  In addition, clients' return visits, with the exception of routine supply visits, "should include an assessment of the client's health status, current complaints, and evaluation of birth control method, as well as an opportunity to change methods."  *Id.*  The following "components" must be offered to and documented on all clients at such return visits: history; examination; laboratory testing; and follow-up & referrals.  *Id.*  In addition, defendant is required to provide client education on a variety of topics, including information needed to reduce the risk of transmission of sexually transmitted disease.  *Id.* at § 8.1.

Plaintiff acknowledged that she was to perform her duties as an HCS-I in conformance with defendant's rules and regulations.  Gordon Dep. at 32.  Plaintiff testified that under defendant's procedures, the patient fills out an initial medical history form during the first visit and that the patient also fills out this form when coming in for emergency contraceptives or ECP, unless the patient had a history of receiving ECP from defendant.  *Id.* at 48.  This form includes a space for staff comments to be completed by the HCS-I.  *Id.* at 49.  Plaintiff also testified that in order to dispense prescription medication, she had to have either a written prescription or verbal authorization from the nurse practitioner or doctor on duty at the time.  *Id.* at 21.

Ms. Reiter was responsible for putting defendant's procedures and policies in place, and monitoring compliance.  Reiter Aff. at ¶ 2.  Sometime prior to January 2004, Ms. Reiter noted that defendant's protocol for distributing ECP to patients was not being followed in all instances, in that some health care workers were dispensing ECP without clinician authorization.  *Id.* at ¶ 5.  She met with all supervisors on January 14, 2004, and requested that the issue of ECP protocol enforcement be addressed with each of defendant's health care workers.  *Id.*

Plaintiff attended a training session on January 16, 2004, which addressed a number of matters including: defendant's protocol with respect to dispensing ECP; the requirement that only a clinician or nurse practitioner may authorize the dispensing of ECP; that this authorization must be obtained before ECP is given to a patient; and that defendant's protocol would be strictly enforced. *See* Gordon dep. at 58, 61; Janet Isbell Affidavit attached to defendant's brief as exh. F; Terri Ingram Affidavit attached to defendant's brief as exh. G; Jana Foster Affidavit attached to defendant's brief as exh. H; Louisa Rodriguez Affidavit attached to defendant's brief as exh. I; Lorraine Morris Affidavit attached to defendant's brief as exh. J. At the meeting, defendant's Center Manager Dionel Rosema warned that the protocol "would be enforced" and that "a violation of the protocol would result in termination of employment." Nancy Miller Affidavit at ¶ 4, attached to defendant's brief as exh. E. Plaintiff testified that that she recalled Ms. Rosema telling the people at the meeting "that no ECP orders were to be signed after the patient has left the clinic." Gordon dep. at 64.

On January 29, 2004, nurse practitioner Nancy Miller reviewed the chart of patient "ST," who had been seen by plaintiff. Miller Aff. at ¶ 5. Miller noted that ST had not completed questions 15 ("do you smoke"), 16 (requesting German Measles history) and 17 ("have you had the Hepatitis vaccine?"). *Id.* In addition, there was no indication in the staff comments that plaintiff provided provided "ST" with Hepatitis B vaccine education. *Id.* Miller placed a sticky note on the chart, which inquired of plaintiff "Did you address Hep B?" *Id.* at ¶ 6. Miller discussed the incomplete charting with Rosema, who requested the chart. *Id.* at ¶ 7. Plaintiff testified that she read Miller's note, that she "possibly discussed Hep B" and then added the staff note "Discussed Hep B vaccine" to ST's initial medical history form. Gordon dep. at 87. When Miller retrieved

4

"ST's" chart, she noticed that the patient questions 15 and 17 were now answered, and that someone had added "Discussed Hep B vaccine" to the staff comments section. Miller Aff. at ¶ 8.

Miller also noticed that the chart for "KD," another patient seen by plaintiff on that date, had been given ECP, but there was no clinician signature authorizing the prescription. *Id.* at ¶ 9. Miller brought this chart to Rosema's attention. *Id.* at ¶ 10. Miller stated that she did not give verbal authorization to dispense ECP to patient "KD." *Id.* at ¶ 10.

When Ms. Rosema questioned plaintiff the next day, plaintiff admitted that she had not completed the Hepatitis B education with "ST" and that she added the notion to indicate she had done so. Gordon dep. at 105-06. Plaintiff did not believe that adding the notation to the medical record after the patient left was an alteration of a medical record. *Id.* at 106. In addition, plaintiff admitted that on January 29, 2004, she dispensed ECP to "KD" without written clinician authorization. *Id.* at 90-92. Ms. Rosema told plaintiff not to return to the clinic for work until further notice from Rosema or Reiter. *Id.* at 104.

Ms. Reiter asked the nurse clinicians whether they had authorized plaintiff to dispense ECP to patient "KD" without a written signature, and the clinicians advised Reiter that they had not given plaintiff such authorization. Reiter Aff. at ¶ 10; Miller Aff. at ¶ 10; Isabell Aff. In light of the situation, Reiter conducted an audit of the clinic's patients seen after the January 16, 2004 staff meeting. Reiter Aff. at ¶ 11. Reiter discovered that another patient, "VJ," received ECP on January 16, 2004, with no written authorization to receive the medication, no informed consent for the medication, and no medical history related to "VJ's" appointment at the clinic. *Id.* According to the records, plaintiff was HCS-I that dispensed the ECP to "VJ." Medical records at Reiter Aff. exh. 2.

5

Reiter terminated plaintiff's employment based upon the alteration of "ST's" medical records and the violation of protocol in the distribution of ECP to "ST" and "VJ," both of which occurred after the warning given at the January 16, 2004 staff meeting. Reiter Aff. at ¶¶ 13-14. Plaintiff was advised of the termination on February 4, 2004. *Id.* at ¶ 33.

### II.     The administrative action and complaint

Plaintiff filed a charge of discrimination with the Michigan Department of Civil Rights and the United States Equal Employment Opportunity Commission ("EEOC") on March 22, 2004, alleging race discrimination based upon the following facts:

> I was discharged for altering a medical record after a patient's departure from the clinic and for dispensing prescription medication to a patient without consultation/order by a clinician. I am aware of three White employees who have altered medical records after patient(s)' departure(s), who have dispensed medication to patient(s) without a consultation/order by a clinician, and who have not been discharged.

*See* Charge of Discrimination attached to Compl.

Plaintiff based her EEOC charge on Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000 *et seq.* ("Title VII") and the Michigan Civil Rights Act, MCL § 37.2201 *et seq.* Plaintiff received a "Right to Sue" letter from the EEOC dated November 11, 2005, and filed the present suit in federal court on February 7, 2006.

Plaintiff's complaint alleges that defendant violated Title VII, which prohibits discrimination on the basis of race, color, religion, sex, or national origin in federal and private employment. *See* 42 U.S.C. § 2000e, 2000e-2. Specifically, plaintiff claims that defendant terminated her employment based upon her race, alleging as follows:

> I was terminated 2/2/04 for altering a medical record & dispensing ECP medication without a clinician's written order on January 29, 2004. This act was customary procedure of Planned Parenthood. It was acceptable to dispense ECP

>  emergency contraception after the fact.  A verbal authorization was also acceptable
> to dispense ECP.  Both White and Black healthcare specialists dispensed Plan B
> emergency contraception without a clinician's written authorization on January 29,
> 2004.

*See* Compl. at ¶ 7G.  Plaintiff identified "Leslie," a white employee, as being treated differently than her because of race.  *Id.* at ¶¶ 7E and 7F. Although the original EEOC charge referenced a violation of the Michigan Civil Rights Act in addition to Title VII, plaintiff's present complaint does not allege a cause of action based upon the state statute.  Defendant has now moved for summary judgment on the complaint.

### III.    Legal standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).   However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for

purposes of ruling on a motion for summary judgment." *Scott v. Harris*, -- U.S. --, 127 S.Ct. 1769, *1776 (2007).

### III. Discussion

Plaintiff does not claim that this case involves direct evidence of race discrimination, such as racist comments by a supervisor. Gordon dep. at 170-71. Accordingly, the court views her claim as one involving indirect evidence of discrimination. In Title VII cases involving indirect evidence of employment discrimination, the Sixth Circuit utilizes a burden-shifting analysis as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 731 (6th Cir. 2000); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). To establish a *prima facie* case of discrimination under *McDonnell Douglas*, plaintiff must demonstrate: (1) that she was a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was qualified for the position; and (4) that she was replaced by a member of an unprotected class or treated differently from similarly situated members of the unprotected class. *McDonnell Douglas Corp.*, 411 U.S. 792; *Hoskins*, 227 F.3d at 731. If the plaintiff establishes a prima facie case, then an inference of discrimination arises, and the burden of production shifts to the employer to to set forth a legitimate, non-discriminatory reason for plaintiff's discharge. *Hoskins*, 227 F.3d at 731. If the employer presents a nondiscriminatory reason for the adverse employment action, then "the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chemical Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994) (analyzing age discrimination claim). This returns the burden to plaintiff to prove discrimination "to a new level of specificity." *Mischer v. Erie Methodist Housing*

*Authority*, 168 Fed Appx. 709, 714 (6th Cir. 2006), *quoting Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

In the present case, defendant contends that plaintiff failed to establish a *prima facie* case of discrimination. The court agrees. Defendants do not dispute the first three elements of a *prima facie* case: that plaintiff was a member of a protected class (African-American); that she suffered an adverse employment action (termination); and that she was qualified for the position (HCS-I). With respect to the fourth element, plaintiff does not claim that she was replaced by a member of an unprotected class; rather she claims that she was treated differently from similarly situated members of an unprotected class, i.e., a white employee named Leslie.

"In order for two or more employees to be considered similarly-situated for the purpose of creating an inference of disparate treatment in a Title VII case, the plaintiff must prove that all of the relevant aspects of his employment situation are nearly identical to the [members of the unprotected class] who he alleges were treated more favorably." *Pierce v. Commonwealth Life Insurance Company*, 40 F.3d 796, 802 (6th Cir. 1994). As the Sixth Circuit stated in *Mitchell*:

> [T]o be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell*, 964 F.2d at 583 (citation omitted).

Plaintiff initially identified three white HCS-I workers who dispensed ECP without appropriate signatures on January 29, 2004 as Erin Price, Terri Ingram and Amy Kruszkowski. Diane E. Brady Affidavit at ¶ 9, attached to defendant's brief as exh. D. Defendant's scheduling and payroll records, however, establish that neither Price nor Ingram worked on January 29, 2004. *Id.*

9

at ¶ 10. The charts for Kruszkowski's patients receiving ECP on that date contained the requisite written clinician authorization. *Id.*

Plaintiff later identified Leslie Braate as the white employee dispensing ECP without clinician authorization on January 29, 2004. Gordon dep. at 127.[1] Plaintiff had no personal knowledge of Braate's actions on that date, but claims that Braate "[t]ell me what it is she did." *Id.* at 127-30. In addition, plaintiff testified that "all the staff" employed at defendant dispensed ECP without a consultation or order by a clinician, and that Price and Kruszkowski dispensed ECP without a consultation or order by a clinician after the January 16, 2004 staff meeting. *Id.* at 130-41. However, other than these conclusory allegations, plaintiff could offer no specific information regarding these incidents and could not testify that she saw charts where ECP was dispensed without a clinician's signature. *Id.*

Defendants records indicate that "Ms. Braate attended the care of 84 patients between January 16 and 29, 2004," and that between these dates "none of the patients attended to by Ms. Braate received ECP without a written clinician order." Reiter Affidavit at ¶¶ 1-2, 15-16. After performing an on-going daily audit of defendant's patients receiving services after January 30, 2004, Ms. Reiter discovered two instances when a patient received ECP without a clinician's signature. *Id.* at ¶ 17. "In those instances, the Health Care Specialists who improperly dispensed ECP without first obtaining a clinician's signature were terminated. Both Health Care Specialists were Caucasian." *Id.*

---

[1] Defendant employed an HCS-I named Leslie Braate. It appears that plaintiff referred to this employee throughout the deposition as "Leslie Brack." *See* Reiter Aff. at ¶ 15.

In her brief opposing defendant's motion, plaintiff sets forth a number of statements regarding defendant's policies and her experience in dispensing ECP. However, none of these statements have been set forth in an affidavit as required by Fed. R. Civ. P. 56(c) and (e). Accordingly, the court will disregard these unsworn statements for purposes of determining this motion for summary judgment.[2]

Based on this record, plaintiff has failed to demonstrate the fourth element, a *prima facie* case of race discrimination, i.e., that she was treated differently from similarly situated members of an unprotected class. First, a jury could not reasonably find that Price, Ingram, Kruszkowski or Braate were similarly situated members of an unprotected class, i.e., that they dispensed ECP without a clinician's written authorization during the relevant period beginning January 16, 2004. Second, it is undisputed that when defendant identified two other similarly situated members of an unprotected class who had dispensed ECP without the requisite clinician's authorization, defendant discharged these individuals. Third, plaintiff presents no evidence of any other person who was a similarly situated member of an unprotected class who altered medical records.

### IV. Conclusion

Defendant's motion for summary judgment (docket no. 42) will be **GRANTED**, and an order consistent with this opinion shall be issued forthwith.


Dated:  September 20, 2007                         /s/ Hugh W. Brenneman, Jr.
                                                   HUGH W. BRENNEMAN, JR.
                                                   United States Magistrate Judge

---

[2] The court addressed this issue at length in its September 20, 2007 order (docket no. 73).